UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO. 6:23-cr-196CEM-RMN

ISLAM DOCI
     a/k/a Islam Doqi

## UNITED STATES' SENTENCING MEMORANDUM

On January 25, 2022, the defendant lied extensively to agents of the Federal Bureau of Investigation ("FBI") who were conducting an investigation into international terrorism. The Defendant lied to conceal his own support of the Islamic State of Iraq and al-Sham ("ISIS"), a foreign terrorist organization. Indeed, over a period of years, the Defendant had, among other things, spread ISIS propaganda on social media platforms; provided others with guidance on how to send money overseas to support ISIS; and sent money himself to support ISIS, all facts the Defendant falsely denied. The Defendant also lied to protect others affiliated with these same ISIS support groups, effectively obstructing further investigation of these individuals.

As explained below, because the Defendant's offense of conviction, lying to FBI agents during an international terrorism investigation, involved or was intended to promote, a federal crime of terrorism that was calculated to influence or affect the conduct of government by intimidation or coercion, the Court should apply the terrorism enhancement under USSG § 3A1.4. The United States believes a guideline sentence of 96 months' imprisonment is appropriate given the nature of the offense,

defendant's history and characteristics, and the need to promote the purposes of sentencing under 18 U.S.C. § 3553.

## PROCEDURAL BACKGROUND

On October 11, 2023, a federal grand jury indicted the Defendant on four counts of false statements to a federal agency related to a terrorism investigation, in violation of 18 U.S.C. § 1001(a). Doc. 1. On October 15, 2024, the Defendant pleaded guilty, pursuant to a Plea Agreement, to Count Three of the Indictment. Docs. 60, 64.

The Probation Officer prepared a presentence investigation report (PSR) and determined that, based on application of the terrorism enhancement under USSG § 3A1.4, Defendant's total offense level is 29 with a criminal history category of VI. PSR, Doc. 79, ¶ 85. This would result in a guideline range of 151-188 months' imprisonment; however, the statutory maximum for the count of conviction is 96 months' imprisonment. As such, the Defendant's advisory guideline imprisonment range is 96 months. The Defendant has objected to application of the terrorism enhancement.

## FACTS

The plea agreement sets out a detailed recitation of the facts in this case, as does the PSR, which the United States hereby incorporates. Doc. 60; PSR Doc. 79. In addition to those facts, the Government intends to offer witness testimony at sentencing in relation to the terrorism enhancement and the 18 U.S.C. § 3553 factors. The United States plans to offer the following documents, copies of which will be submitted to the Court, as sentencing exhibits: FBI reports; Facebook communications

and accompanying translations; online confidential employee ("OCE") reports; and financial records.[1]

## A. Background on the FBI's Investigation of the Defendant

In or around 2017, the Defendant came to the attention of FBI due to his online associations and activity on social media. Specifically, an FBI employee acting in an undercover capacity observed several public pro-ISIS posts on the Defendant's social media account. *See* PSR, ¶¶ 12(a)-(d). In or around January 2018, after being notified of the promotion of extremist views on the Defendant's social media account, FBI Tampa opened an investigation. *See* PSR, ¶¶ 13-14.

The FBI later obtained a federal search warrant for the Defendant's Facebook Accounts: Facebook Account ending in 3783 with display name "Creekwood Forlife" and Facebook Account ending in 1911 with display name "Dok Avalla," (together, the "Facebook Account"). Search warrant returns and other evidence showed that the Defendant consistently spread ISIS propaganda, administered an ISIS Facebook group; sent money overseas to support ISIS; and recruited and guided others to send money overseas to support ISIS. *See* PSR, ¶¶ 15-37.

## B. The Defendant Spread ISIS Propaganda

The Defendant spread ISIS propaganda through his pro-ISIS Facebook Account posts and conversations with known ISIS members. For example, on or about June 24, 2016, the Defendant posted on his Facebook Account a photo of himself

---

[1] A copy of these documents, which the United States expects to offer into evidence under seal at the time of sentencing, are also being separately submitted to the Court.

holding up a single index finger accompanied by the inscription "Baqya." The index finger pointing up generally represents "Tawhid" or the oneness of Allah. The image is also widely used as a symbol to identify ISIS supporters to each other. "Baqya" also written bakija, bakiyah, or baqiya means "remaining." It is often used in ISIS propaganda to indicate the Islamic State endures. Baqya, combined with the single index finger, is a commonly known image associated with ISIS supporters. *See* PSR, ¶ 12(a). Similarly, on or about November 28, 2017, the Defendant shared a picture of the index finger pointing up with a caption in Arabic that translates to, "There's no God but Allah." PSR, ¶ 12(c).

Additionally, the Defendant engaged in ongoing communications with at least four individuals believed to be ISIS members (referred to herein as Associate 1 through Associate 4). *See* Doc. 60. The content of such communications related almost exclusively to providing support to ISIS. For example, in and around November and December 2018, the Defendant communicated with Associate 4, who was overseas:

| | |
|---|---|
| Defendant: | Big battle going on in Hajin,[2] huh? |
| Associate 4: | Yes, man. *Praise be to God.* |
| Associate 4: | May God kill the *infidels*! |
| Defendant: | Amen! |
| Associate 4: | Nusayris struck the mosque again today. |
| Associate 4: | May God kill them! |

---

[2] Hajin is a city in Syria.

| | |
|---|---|
| Defendant: | Amen, amen! |

…

| | |
|---|---|
| Associate 4: | Have you spoken to anyone, or no? |

Defendant:     Yes brother, I spoke with one guy who said, "Wait for me to earn some tips, I haven't earned any money." Anyway, he just kept on, but anyway. I will talk to a guy who comes to work in an hour on how to send it and what not. The hell with them! You cannot get two people together when it comes to helping the Islamic State, but thousands get collected when it comes to helping the polytheists.   Hope it all turns well brother.

Associate 4:     That's true brother. *Praise be to God*.

Defendant:     The world is over. Our state of affairs is a reflection of who we are.

Associate 4:     That is true. Praise be to *God. God* knows best. Nothing good comes from us.

Defendant:     It bugs me that when a certain Burhan Seferi published a post one day, requesting help for someone, all rose to help, but when we sought help for a mujahid, I do not even know if he heard from three people. What do you say to that? On the other hand, [they say]: "We are with the mujahedeen."

Defendant:     Lies, *hypocrites.*

Associate 4:     Hey brother, let me tell you something.
Do you know that *God* does not accept from everyone?
God does not make it possible for everyone to get a big reward.
Do not fret.

Defendant:     It does upset me brother when they act as if in support of the State, yet, when it comes to helping out, they even close their Facebook accounts.

…

| | |
|---|---|
| Defendant: | We are all on that path, even if we are not there carrying Kalashnikovs. |
| … | |
| Associate 4: | May God increase the numbers of good brothers everywhere! |
| Defendant: | Some with Kalashnikovs, some with money, some with prayers. |
| Defendant: | Amen! |

Thus, by expressing his pleasure in killing infidels; his desire to promote the Islamic State; and his desire to help the *mujahideen* (an Arabic word referring to individuals who engage in *jihad*), the Defendant illustrated his clear support for ISIS. Moreover, the Defendant revealed in the conversation that he is speaking with an individual he worked with about sending money in support of ISIS. Thus, based on his own statements, the Defendant's attempts to spread ISIS propaganda and recruit others to contribute to ISIS were not limited to his online activities. Finally, by stating "we are all on that path," he likened his own contributions to ISIS to contributions made by his ISIS "brothers" carrying guns.

### C. The Defendant Administrated an ISIS Facebook Group

Based on search warrant returns for the Facebook Account, on or about October 13, 2019, the Defendant was appointed an administrator of the private group named "ISIS (Islamic State open Law Shariah.)" Another administrator of the group ("Administrator 1") messaged the Defendant and stated, "Brother I left you as an admin in this group too. If they block my [social media account], at least the private group does not get shut down. Now you can add too. Only allow pro-Islamic State to

join. Others who talk nonsense don't admit them because they'll just upset us." The Defendant replied, "Not everyone can enter here." PSR, ¶ 35. Administrator 1 chose the group to be private and stated to the Defendant, "Because private they can't block us and public we are done." The Defendant replied, "Yes, they block us right away public." Administrator 1 then stated, "We have methods to return again. We have remained for five years and will continue…God willing." The Defendant responded, "God willing brother. But must be careful." PSR, ¶ 36.

Thus, not only did the Defendant individually post ISIS propaganda online, but he administered an entire Facebook group, the purpose of which was to support ISIS. Moreover, the Defendant took steps to ensure that the Facebook group was private, acknowledging that the group would be blocked if it was public. As discussed below, when interviewed by the FBI, the Defendant denied even being a member of any Facebook groups, let alone being an administrator.

### D. The Defendant Sent Money to ISIS and Guided Others to Also Send Money in Support of ISIS

It is expected that the testimony and evidence at sentencing will establish that the Defendant sent no less than hundreds of dollars overseas to support ISIS. Additionally, the Defendant guided others through the process of sending money overseas to support ISIS, including, how to send the money, where to send it, and the best procedures to follow to ensure the money made its way to ISIS. For example, on November 30, 2017, the Defendant and Associate 3 discussed sending money overseas to support ISIS:

| | |
|---|---|
| Defendant: | Eh brother, last night when I was talking to you about charity… May Allah forgive me. I am not telling you to show off, no I swear. But after I talk to [redacted]. |
| Associate 3: | Say it brother.<br>May Allah accept it. |
| Associate 3: | It's permissible to tell brother for the purpose of pushing others to give. |
| Defendant: | [redacted] had talked with [redacted]. They said that Bota Islame [Islamic World] page is asking for help for the martyrs' families and the place to send the money is in Ulcinj, and I sent it where [redacted] and [redacted] told me, 100 as a start. |
| Associate 3: | I was going to ask you. |
| Defendant: | I thought of telling you that's where to send because they are safe. |
| Associate 3: | I have thought of sending them many times but as far as being safe brother, it's hard to trust everyone nowadays. |
| Defendant: | Yes brother you are right for thinking that way, but when you are able to, send it there. Talk to [redacted]. |
| Associate 3: | Bota Islame [Islamic World] was there before and [redacted] along with someone else maintain it. |
| Associate 3: | Now that page reopened again. |
| … | |
| Defendant: | Do you know how to send it brother? |
| Associate 3: | With RIA. |
| Associate 3: | RIA. |
| Defendant: | May Allah love you brother. |
| Defendant: | I have sent it with Western Union. |

8

| | |
|---|---|
| Associate 3: | Amen brother, you too. |
| Defendant: | I don't know this RIA. |
| … | |
| Defendant: | Under what name are you sending it brother? Because it's necessary to give them the name so they know. There is a sister who gets the money. |
| Associate 3: | With my name.<br>[redacted]<br>As far as I know in RIA's system I have it [redacted] not [redacted] but anyhow you can tell them both. |
| Defendant: | Brother, he is saying here is no RIA there only Western Union and it's the safest. |
| Defendant: | [image of screenshot of a conversation in another language] |
| Defendant: | Brother when you send it, you must give the sender's name otherwise they are not able to receive it. |
| Associate 3: | Ok, no problem.<br>[Redacted] is sending it since it's with Western Union. Because a form needs to be filled out with WU [sic]. |
| Associate 3: | When I send it, I will give you the number and you send it to them, [redacted] and that sister or [redacted]. |
| Defendant: | Wait brother so I can get the name from [redacted]. Ma Allah reward you and repay you with 700 times more, the way the majestic Allah has promised us. Because [IL] a little brother. |

The conversation continued as the Defendant and Associate 3 further discussed how to send the money to ensure its security. The Government expects to present additional testimony and evidence at sentencing establishing that the Defendant sent money

overseas to ISIS and helped others do the same, including conversations with an FBI OCE in which the Defendant described sending money overseas to support ISIS.

### E. **On January 25, 2022, the Defendant Lied to FBI about his Support of ISIS**

On January 25, 2022, FBI agents conducted a recorded, non-custodial interview of the Defendant in relation to an international terrorism investigation. *See* PSR, ¶ 37. The Defendant was informed at the onset of the interview that if he made a false statement he could be punished under federal law. *Id*. The interview was conducted in English, and the Defendant answered questions and otherwise communicated with the agents during the interview without issue. *Id*. During the interview, the Defendant claimed that he never participated in social media groups (when, in fact, he knew he had been an administrator for the Bota Islame [Islamic World] Facebook group); that he never supported ISIS (when, in fact, he knew he supported ISIS in the ways discussed above); that he never spread ISIS propaganda (when, in fact, he knew he spread ISIS propaganda as discussed above); that he did not know Associate 3 (when, in fact, he did know, and often communicated with Associate 3); that he never provided guidance to other people on how to send money overseas (when, in fact, he knew he did provide such guidance); and that he did not know Associate 4 was a fighter for ISIS (when, in fact, he knew Associate 4 was an ISIS fighter). *Id*. The Defendant's statements to FBI during the interview were shown to be false based on the content of his Facebook Account.

## ARGUMENT

### I. The Terrorism Enhancement Should Apply

The terrorism enhancement under USSG § 3A1.4 applies if "the offense is a felony that involved, or was intended to promote, a federal crime of terrorism." Per Application Note 1 of that section, "federal crime of terrorism" has the meaning given in 18 U.S.C. § 2332b(g)(5). In turn, Section 2332b(g)(5) provides that Federal crime of terrorism means an offense that (A) is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct; and (B) is a violation of one of the enumerated offenses set forth in that section, which includes, section 2339B (relating to providing material support to terrorist organizations). Thus, USSG § 3A1.4 requires proof of the following two elements:

> (1) the defendant must have been convicted of an offense that involved or was intended to promote a federal crime of terrorism; and

> (2) the offense must have been "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct.

See 18 U.S.C. § 2332B(g)(5); *United States v. Graham*, 275 F.3d 490, 517 (6th Cir. 2001) (holding that district court must specify which of the terrorism offenses "the defendant intended to promote, satisfy the elements of § 2332b(g)(5)(A), and support its conclusions by a preponderance of the evidence standard…"); *United States v. Chandia*, 675 F.3d 329, 340 (4th Cir. 2012) ("Chandia III") (district court's finding that Chandia provided material support to LET leader to influence or affect government conduct was adequate to support application of terrorism enhancement).

11

Here, as explained below, the terrorism enhancement should apply because the defendant's offense "involved, or was intended to promote" a federal crime of terrorism, that is, a violation of § 2339B (providing material support to a foreign terrorist organization), *and* that offense was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct."

### A. The Defendant's Offense "involved, or was intended to promote, a federal crime of terrorism."

USSG Section 3A1.4 applies "[i]f the offense is a felony that involved, or was intended to promote, a federal crime of terrorism" and the intent element is met. To meet the offense element, the defendant may have been convicted of one of the enumerated crimes listed in 18 U.S.C. § 2332b(g)(5)(B). Alternatively, he may receive the enhancement if his substantive offense or relevant conduct "involved, or was intended to promote" one of the enumerated crimes. *See, e.g.*, *United States v. Mandhai*, 375 F.3d 1243, 1247 (11th Cir. 2004) (applying enhancement to 18 U.S.C. § 844(n) conviction). As the Eleventh Circuit explained in *Mandhai*, the enhancement is not limited, however, to offenses that are themselves federal crimes of terrorism. By including the "intended to promote" language, the drafters of the Guideline "unambiguously cast a broader net." *Mandhai* at 1247. The criminal conduct at issue need not itself meet the statutory definition of a federal crime of terrorism if "a goal or purpose [of the defendant's act] was to bring or help bring into being a crime listed in 18 U.S.C. 2332b(g)(5)(B)." *Id*. In fact, many courts have concluded that the defendant

12

need not be convicted of one of the enumerated federal crimes of terrorism for § 3A1.4 to apply. As the Sixth Circuit has explained:

> [T]he "intended to promote" language means something different from the word "involved." A defendant who intends to promote a federal crime of terrorism has not necessarily completed, attempted, or conspired to commit the crime; instead the phrase implies that the defendant has as one purpose of his substantive count of conviction or his relevant conduct the intent to promote a federal crime of terrorism. On this reading, the offense of conviction itself need not be a "Federal crime of terrorism."

*Graham*, 275 F.3d at 516 ("[T]he defendant need not have been convicted of a federal crime of terrorism as defined in 18 U.S.C. § 2332b(g)(5) for the district court to find that he intended his substantive offense of conviction or his relevant conduct to promote such a terrorism crime."); *United States v. Stafford*, 782 F.3d 786, 792 (6th Cir. 2015) (applying enhancement to defendant charged with conspiracy to use a weapon of mass destruction and attempting to damage or destroy property used in interstate commerce where defendant's agenda was violent revolutionary escalation of the "Occupy Movement"); *United States v. Siddiqui*, 699 F.3d 690, 708–09 (2d Cir. 2012) (enhancement applied where defendant's offense—attacking American military personnel and FBI agents—was calculated to influence the government and retaliate against it, even if her intent was formed in a matter of seconds); *United States v. Jayyousi*, 657 F.3d 1085, 1115 (11th Cir. 2011) (enhancement applied where ample evidence defendant sought to impose Sharia law in the Middle East and unseat the sitting governments there).

The Seventh Circuit has also affirmed application of the terrorism enhancement based on the defendant's purpose and intent to obstruct a terrorism investigation, even where the obstruction of justice offense was not a federal crime of terrorism and the defendant was acquitted of the terrorism charge. *United States v. Ashqar*, 582 F.3d 819, 826 (7th Cir. 2009). Likewise, the Second Circuit has found that "[t]he 'intended to promote' prong applies where the defendant's offense is intended to encourage, further, or bring about a federal crime of terrorism, even though the defendant's own crime of conviction or relevant conduct may not include a federal crime of terrorism." *United States v. Awan*, 607 F.3d 306, 314 (2d Cir. 2010).

Importantly, Application Note 2 of Section 3A1.4 provides that "an offense that involved…obstructing an investigation of a federal crime of terrorism shall be considered to have involved, or to have been intended to promote, that federal crime terrorism." Also, "in determining whether the terrorism enhancement should apply for obstructing an investigation under Note 2, the enhancement is only appropriate for obstructing investigations into the specific offense of terrorism, and not general terrorism investigations or intelligence gathering." *United States v. Benkahla*, 501 F. Supp. 2d 748, 752 (E.D. Va. 2007); *see also United States v. Fidse*, 862 F.3d 516 (5th Cir. 2017).

> B.  *The Defendant's Offense "involved, or was intended to promote, a federal crime of terrorism."*

Here, the Defendant's offense was intended to promote a violation of 18 U.S.C. § 2339B, which prohibits the knowing provision of "material support or resources" to

14

a foreign terrorist organization or attempts or conspiracies to do so.[3] Section 2339B is

an enumerated federal crime of terrorism under 18 U.S.C. § 2332b(g)(5). Under

Sections 2339B(g)(4) and 2339A, the term "material support or resources" means –

> Any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, documentation or identification, communications, equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials.

18 U.S.C. § 2339A(b)(1).

> Section 2339B(h), relating to the provision of personnel, provides that –

> No person may be prosecuted under this section in connection with the term "personnel" unless that person has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under the terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization. Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control.

18 U.S.C. § 2339B(h).

---

[3] Section 2339B goes on to state that "[t]o violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization…that the organization has engaged or engages in terrorist activity…or that the organization has engaged or engages in terrorism." 18 U.S.C. § 2339B(a).

Several courts have upheld convictions under § 2339 for provision of services and personnel to a foreign terrorist organization. For example, in *United States v. Suarez*, 893 F.3d 1330, 1333 (11th Cir. 2018), *cert. denied*, 139 S. Ct. 845 (2019), the defendant was convicted of violations of 18 U.S.C. §§ 2332a and 2339B after he plotted a bomb attack on a Florida beach in support of ISIS. The FBI learned of the defendant's posting of ISIS propaganda and thereafter introduced a confidential source and an undercover agent to the defendant to disrupt the plot. Challenging the sufficiency of the evidence on appeal, the defendant claimed that he did not provide material support or resources. *Id*. at 1334. The Eleventh Circuit disagreed, holding that the government had offered substantial evidence showing that Suarez knowingly provided material support to ISIS. *Id*. at 1335. The Eleventh Circuit noted the following:

> Through his Facebook account, Suarez posted ISIS propaganda, requested help in building bombs, attempted to recruit others to join him in attacks, and filmed a recruitment video to this end…He coordinated directly with individuals whom he believed to be members of ISIS in order to acquire a bomb. He provided the money and materials for the bomb, and he accepted the bomb while reiterating his plan to detonate it on a crowded beach. On this basis, a reasonable jury could conclude that Suarez attempted to direct his services to the benefit of a foreign terrorist organization.
>
> Suarez argues that there was no coordination or direct contact with an actual foreign terrorist organization because he had contact only with the government informant and undercovers. But it is irrelevant that he did not make contact with ISIS, because the law requires only that Suarez directed (or attempted to direct) his services to ISIS…Suarez had the requisite intent to coordinate with ISIS and direct his services to ISIS, and he took substantial steps to do so. Accordingly, there was sufficient evidence to

convict Suarez for attempting to provide material support to a foreign terrorist organization…."

*Id.*

Likewise, in *United States v. Hendricks*, 950 F.3d 348, 354 (6th Cir. 2020), the Sixth Circuit determined that there was sufficient circumstantial evidence to show that the defendant attempted and conspired to direct personnel or services to ISIS. There, the defendant had approached a group of people and proposed waging jihad in the United States. *Id.* at 350. He had also expressed admiration for ISIS and asked the prospective group members to recruit other like-minded individuals. *Id.* The court stated that, among other things, the defendant had expressed allegiance to the leader of ISIS, asked members of the group to distribute ISIS propaganda, had described himself as a "limb" or an "outpost" and ISIS as the "ultimate brain" or "headquarters," and identified himself as a recruiter. *Id.* at 353-54. It held that the government was not required to present "direct evidence of any conversation or meeting with specific ISIS members where Hendricks was directed or proposed to establish an ISIS cell." *Id.* at 354. Instead, "there was a mountain of circumstantial evidence from which a juror could find beyond a reasonable doubt that Hendricks attempted and conspired to direct services or personnel to the ISIS organization—not merely operate an 'entirely independent[ ]' venture." *Id.* (citing 18 U.S.C. § 2339B(h)).

Here, there is the same "mountain of circumstantial evidence" showing that the Defendant provided money, other services, and personnel in support of ISIS, a designated foreign terrorist organization. Specifically, the Defendant sent money

overseas to support ISIS, assisted others in sending money overseas, and pledged to send more money when he could. Additionally, the Defendant spread ISIS propaganda and radical ISIS jihadi ideology online. Thus, the Defendant attempted not only to support ISIS himself, but also attempted, through his recruitment efforts, to also encourage others to support ISIS.

Moreover, the Defendant clearly attempted to obstruct the FBI's specific terrorism investigation into the Defendant's support of a foreign terrorist organization by lying during an FBI interview about his contact with ISIS Associates, his support of ISIS online, and his monetary contributions to ISIS. Thus, in accordance with Application Note 2—which by its plain language does not require the government to show actual obstruction or reasonable reliance on the false information—the Defendant's offense in this case should be deemed to involve or been intended to promote a federal crime of terrorism. *See Ashqar,* 582 F.3d at 824 (affirming an Application Note 2-based enhancement based on the refusal to testify).[4]

---

[4] Some Circuits, however, have required a showing of "actual obstruction," and determined that attempted obstruction is insufficient. *Benkahla*, 501 F. Supp. 2d at 757; *see also Graham*, 275 F.3d at 519 (applied to § 371 conspiracy); *United States v. Thurston*, No. CR 06-60069-01-AA et al., 2007 U.S. Dist. LEXIS 38185 (D. Or. May 21, 2007) (applied to § 371 conspiracy) (unreported); *United States v. Aref*, 2007 WL 804814 (N.D.N.Y. Mar. 14, 2007) (money laundering) (unreported); *United States v. Arnaout*, 431 F.3d 994, 1000–01 (7th Cir. 2005) (§3A1.4 analysis was appropriate to RICO conviction); *United States v. Hale*, 448 F.3d 971, 988 (5th Cir. 2005); *United States v. Biheiri*, 356 F. Supp. 2d 589, 600 (E.D. Va. 2005). Regardless, and as will be shown at sentencing, the FBI was not and currently is not aware of the full extent of the Defendant's involvement in terrorism financing and, as such, the Defendant's false statements did, in fact, obstruct the investigation.

*C. The Defendant's conduct was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct."*

In applying the terrorism enhancement, the Eleventh Circuit has explained that the focus of the terrorism enhancement is "the intended outcome of the defendants' unlawful acts—i.e., what the activity was calculated to accomplish, not what the defendants' claimed motivation behind it was." *Jayyousi*, 657 F.3d at 1115 (upholding application of terrorism enhancement where record demonstrated that defendant's activities were intended to displace "infidel" governments that opposed radical Islamist goals); *United States v. Mandhai*, 375 F.3d at 1248 ("[I]t is the defendant's purpose that is relevant, and if that purpose is to promote a terrorism crime, the enhancement is triggered."); *United States v. Bell*, 81 F. Supp. 3d 1301, 1311–12 (M.D. Fla. 2015) (applying terrorism enhancement where evidence at sentencing showed the defendant's goal was to play a role in the overthrow of secular governments and their replacement with government's rooted in radical Islam; and where the defendant traveled to fight for a foreign terrorist organization); *Awan*, 607 F.3d at 316–17 (finding that government only had to demonstrate that defendant's offenses were intended to promote a federal crime of terrorism, whatever his reasons for committing them).

As the Eleventh Circuit has stated, "whether a defendant's offense is calculated (i.e., intended) to influence, affect, or retaliate against government conduct is a highly fact specific inquiry that requires examining the record as a whole….because a defendant often will not admit his full knowledge or intentions, the district court may find the requisite calculation or intent existed based on circumstantial evidence and

reasonable inferences drawn from the facts." *United States v. Arcila Ramirez*, 16 F.4th 844, 854–55 (11th Cir. 2021) (finding error, even though the defendant's offense was enumerated under § 2332b(g)(5), where the district court made no factual findings on the issue of the requisite calculation nor defendant's specific intent).

Here, the Defendant has illustrated his desire to affect the ends sought by ISIS (namely, the overthrow of "enemy" states that opposed the spread of the Islamic State and ISIS rule.). Further, the Defendant's conduct (in, among other things, spreading ISIS propaganda online, sending money to support ISIS, and recruiting and guiding others to support ISIS) illustrates that his goal was to play a role in the propagation of the Islamic State. However, if there is any question as to the Defendant's specific intent or calculation to affect the conduct of government by intimidation or coercion, the Defendant's own statements quickly answer that question. As the testimony at sentencing is expected to show, the Defendant made the following statements, among others, in a November 2017 conversation with Associate 3, during which they discuss their desire for the expansion of the Islamic State:

| Associate 3: | I swear this Islamic State will never be extinguished because it is under Allah's protection. Allah has expanded it in many countries, praise be to Allah. |
| --- | --- |
| Defendant: | Praise be to Allah brother. |
| Associate 3: | The infidel have focused more in Syria. |
| Defendant: | Yes man, may Allah humiliate them. |
| Associate 3: | Amen. |

| | |
|---|---|
| Associate 3: | When the surrounding countries strengthen with Allah's permission, we will win. |
| Defendant: | Amen brother. |
| … | |
| Associate 3: | Islam will not lose. |
| Defendant: | May Allah love you brother for these words. |
| Associate 3: | It may weaken due to the infidels confusing the Muslims with propaganda.<br>But praise be to Allah<br>Allah is turning their own traps against them. |
| … | |
| Defendant: | Allah is great. |
| Defendant: | *Baqiya* |
| Associate 3: | *Baqiya bi-ithnillah teala* |
| Associate 3: | [image index finger pointing up] [image of a sword] |
| Associate 3: | The infidel are not able to sell their ploys anymore, praise be to Allah. |
| Defendant: | I am telling myself this brother, if I don't go and even not fight, to just give food to the lions there and to wash their feet. |
| Associate 3: | Don't worry brother because the war has just started. There will be war against the infidels until the end of the world. It's never late. |
| Associate 3: | May Allah make us one of them, amen. |
| Defendant: | Yes God willing. |
| Defendant: | Amen. |

These statements, along with other statements that will be presented at sentencing, illustrate that the Defendant's conduct was calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct.

## II. The § 3553 Factors Support a Significant Term of Imprisonment

In sentencing the Defendant, the court must consider the advisory guidelines range and the factors set forth in 18 U.S.C. § 3553(a). *Gall v. United States*, 552 U.S. 38, 49-50 (2007); *United States v. Rosales-Bruno*, 789 F.3d 1249, 1253-54 (11th Cir. 2015).

### A. The Nature and Circumstances of the Offense

The Defendant lied to the FBI in relation to FBI's international terrorism investigation.  Specifically, the Defendant lied to FBI agents about associates with whom he had communicated; about whether he had provided guidance to others on how to send money overseas; about his membership in social media groups; and about if he had supported ISIS or al-Qaeda. By lying, the Defendant attempted to obstruct and actually obstructed the FBI's terrorism investigation. As will be explained at sentencing, had the Defendant been honest about the guidance he provided to others in sending money overseas, the FBI could have investigated and potentially identified, among other things, other individuals sending money to ISIS and the channels that were being used to do so.

The backdrop to the Defendant's lies to FBI, of course, was the Defendant providing, and attempting to provide, material support to a foreign terrorist organization by, among other things, regularly promoting extremist ISIS propaganda,

22

sending money overseas to help ISIS, and guiding others to do the same. Moreover, during the years leading up to the Defendant's lies to FBI, he spoke extensively to known ISIS members and facilitated a Facebook group, the purpose of which was to support ISIS. Thus, the Defendant's offense conduct (his blatant and repeated lies to FBI) and relevant conduct (his ongoing support of ISIS) is serious because, among other reasons, such conduct strengthens a foreign terrorist organization that desires to harm the United States.

### B.  The History and Characteristics of the Defendant

The Defendant's conduct and communications show that he is a radicalized supporter of ISIS. His willingness to repeatedly lie to the FBI during the course of his interview, even after he had been advised that he could face federal charges if he was not truthful, shows the extent to which the Defendant would go to protect ISIS. His refusal to answer the most seemingly innocuous questions, such as whether he was a member of any Facebook groups, further illustrates his desire to safeguard any and all information he knows about ISIS.

The Defendant's dedication to ISIS began no later than 2017 and escalated through the date of his arrest in 2023. Thus, the Defendant's radical ideology was not just a phase; it spanned almost a decade. As the testimony at sentencing is expected to show, the Defendant was savvy enough to find and associate with at least four ISIS members online. As the testimony at sentencing is further expected to show, in relation to the Defendant's earnings, the Defendant contributed a significant amount of money to the ISIS cause and pledged to contribute more when he could. In fact, in November

2017, the Defendant stated to one of the Associates, "Listen brother! This is what I can afford now. We will see later, because I will not leave it at that. I swear to God, I do not have more right now. I do not regret a penny. Believe me, brother."

    *C. The Need to Protect the Public, Reflect the Seriousness of the Crime, Deter the Defendant and Others, and Provide Just Punishment*

A significant term of imprisonment is required here to promote the purposes of sentencing under 18 U.S.C. § 3553. First, the Defendant poses a threat to the public. The Defendant has demonstrated his desire, willingness, and ability to repeatedly lie to the FBI in an attempt to conceal his support and knowledge of a foreign terrorist organization. Further, the Defendant knows how and where to find ISIS and has communicated with ISIS members overseas. Thus, in light of the Defendant's demonstrated willingness to obstruct the FBI's terrorism investigation, his direct connections to known ISIS members, and his allegiance to a foreign terrorist organization, there is a need to protect the public from the Defendant.

A significant term of imprisonment is also needed to reflect the seriousness of the offense; deter future criminal conduct by the Defendant and others; and to provide just punishment. As discussed above, the totality of the Defendant's offense conduct, which was intended to promote a federal crime of terrorism, is serious. Additionally, the sentence imposed must deter the Defendant, specifically, and must also generally deter other individuals from following down the same extremist path that led to the Defendant's arrest. There is no question that ISIS infiltrates online communication platforms exposing young people to its radical ideology. It is highly likely that other

individuals who support ISIS stay informed as to the prosecutions of those who have gone before them.

Finally, a significant term of imprisonment is needed to justly punish the Defendant. Here, a just punishment must reflect the Defendant's blatant lies to FBI and efforts to obstruct FBI's investigation; his years-long involvement with ISIS; his efforts to support ISIS through online propaganda and monetary contributions; and his efforts to recruit and guide others to also support a foreign terrorist organization.

## CONCLUSION

The United States respectfully requests that the Court overrule the Defendant's objection to the application of the terrorism enhancement and sentence the Defendant to the guideline range sentence of 96 months' imprisonment.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney


By:    /s/ Kara M. Wick
KARA M. WICK
Assistant United States Attorney
FL Bar No. 0085578
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone:   (407) 648-7500
E-mail: Kara.wick@usdoj.gov

**U.S. v. DOCI**                                **Case No. 6:23-cr-196-CEM-RMN**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 4, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Russ Rosenthal, Esq.

                                        _/s/_ Kara M. Wick
                                        KARA M. WICK
                                        Assistant United States Attorney
                                        FL Bar No. 0085578
                                        400 W. Washington Street, Suite 3100
                                        Orlando, Florida 32801
                                        Telephone:     (407) 648-7500
                                        Facsimile:      (407) 648-7643
                                        E-mail: Kara.wick@usdoj.gov